UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdulhadi Alsibai,<br><br>   Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc. and<br>Trans Union, LLC,<br><br>   Defendants. | File No. 20-cv-0963 (ECT/DTS)<br><br>**OPINION AND ORDER** |

Douglas M. Weimerskirch, Hoglund, Chwialkowski, & Mrozik, PLLC, Roseville, MN; Jenna Dakroub, Price Law Group, APC, Scottsdale, AZ, for Plaintiff Abdulhadi Alsibai.

Amy M. Sieben and Bradley D. Fisher, Fisher Bren & Sheridan LLP, Minneapolis, MN; Kari A. Morrigan, Schuckit & Associates, P.C., Zionsville, IN, for Defendant Trans Union, LLC.

   Plaintiff Abdulhadi Alsibai sued three consumer credit reporting agencies under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b). *See* Am. Compl. at 1 [ECF No. 24]. He claims that Defendants "fail[ed] to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of [his] credit reports and credit files[.]" *Id.* ¶ 45. As factual support for this legal conclusion, Alsibai alleges that, in September 2019, Defendants reported an account that was discharged in Alsibai's July 2019 bankruptcy as "charged off," and that this characterization "impl[ied] the debt was still owed[]" when it was not. *Id.* ¶ 44; *see id.* at ¶¶ 12, 14–23. Defendant Trans Union, LLC, has filed a motion for judgment on the pleadings. ECF No. 37. Trans Union

argues that its report of the account was accurate and that, in any event, it maintained reasonable procedures to ensure accuracy, which is all the statute requires. Def.'s Mem. in Supp. at 1–2 [ECF No. 38]. Trans Union's motion will be denied because Alsibai has plausibly alleged that Trans Union did not use reasonable procedures to assure maximum possible accuracy in its preparation of Alsibai's credit reports.[1]

I

According to the operative complaint, Alsibai filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota in April 2019. Am. Compl. ¶ 11. He obtained a discharge on July 9, 2019. *Id.* ¶ 12. About two months later, on September 4, 2019, he requested and received consumer credit reports from three different companies—Experian, Equifax, and Trans Union—"to make sure the bankruptcy reporting was accurate." *Id.* ¶ 14.

This lawsuit centers on how the September 2019 reports described a credit card account that Alsibai used to have with Citibank ("the Citibank Account"). As relevant here, Trans Union's report shows that the Citibank Account was opened in February 2011 and closed in September 2013. ECF No. 46-1.[2] As of August 2019, its "Pay Status" was

---

[1] Defendant Equifax Information Services, LLC, has been dismissed from the lawsuit pursuant to a stipulation, ECF Nos. 80, 82, and Alsibai has moved separately to enforce a settlement agreement against Defendant Experian Information Solutions, Inc., ECF No. 69.

[2] The parties have submitted identical copies of the report in question with irrelevant portions redacted. ECF Nos. 39-1, 46-1. Considering "matters outside the pleadings" generally transforms a Rule 12 motion into one for summary judgment, but not when the documents are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citations omitted). The Trans Union report is one such document. *See id.* ("In general, materials embraced by the complaint include documents

"Charged Off," *id.*; *see* Am. Compl. ¶ 21, and the report shows a "Charged Off" status for every month dating back to March 2014.  ECF No. 46-1; Am. Compl. ¶ 22.  For most of the months in that timeframe, the report shows a zero balance for the Citibank Account, but for April through June of 2019, there is no balance entry at all.  ECF No. 46-1.  Above the table showing these zero balances, however, the report shows a "High Balance of $5,344" from March 2017 to March 2019 and from July to August 2019.  *Id.*

Alsibai believes that this description of the Citibank Account was inaccurate because it did not show the debt as discharged in bankruptcy.  Elsewhere, the report acknowledged that he had obtained a bankruptcy discharge, ECF No. 46-1 at 2, and it reported his other debts as discharged, Am. Compl. ¶ 25.  But according to Alsibai, "[t]he status of Charge[d] Off in the credit reporting industry guidelines means that a debt may be owed," *id.* ¶ 24, and because no debt from the Citibank Account would have survived his bankruptcy discharge, it was inaccurate to describe it as "Charged Off." *Id.* ¶ 44.  The resulting inaccuracy "damaged [his] credit, which he is attempting to rebuild after bankruptcy." *Id.* ¶ 39.  Specifically, he "applied for and received a TCF credit card at less favorable rates due to [Trans Union's] inaccurate reporting," and he has also sustained "actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain." *Id.* ¶¶ 38, 41.

---

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." (citation omitted)); *see also Morris v. Experian Info. Sols., Inc.*, __ F. Supp. 3d __, No. 20-cv-604 (PJS/HB), 2020 WL 4703900, at *2 (D. Minn. Aug. 13, 2020) (to be published) (considering a credit report at the Rule 12 stage).

3

II

A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard as a motion to dismiss under Rule 12(b)(6). *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

The FCRA imposes procedural and substantive requirements meant to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). As relevant to this case, a "consumer reporting agency"[3] must "follow reasonable procedures to assure maximum possible accuracy of the information" in a consumer's credit report. 15 U.S.C. § 1681e(b).

To maintain his claim under § 1681e(b), Alsibai must plausibly allege "that (1) [Trans Union] failed to follow reasonable procedures intended to assure the accuracy of its reports, (2) [it] reported inaccurate credit information about [him], (3) [he] suffered harm,

---

[3]   Trans Union admits that it is a "consumer reporting agency" within the meaning of the statute. Def.'s Am. Answer ¶ 8 [ECF No. 57].

and (4) [Trans Union's] failure to follow reasonable procedures was the cause of [his] harm." *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011). Trans Union focuses on the first two elements, arguing that Alsibai's claim fails as a matter of law because its reporting on the Citibank Account was accurate, it followed reporting procedures that have been "conclusively deemed to comply with the FCRA," and Alsibai never provided it with notice of the inaccuracy by "disput[ing] the account." Def.'s Mem. in Supp. at 1–2.

A

The first issue is also the most complicated. Trans Union argues that its September 2019 report was accurate because it described the Citibank Account as closed five years before Alsibai's bankruptcy with "a $0 balance, $0 scheduled payment and $0 past due amount." Def.'s Mem. in Supp. at 5; ECF No. 46–1. Trans Union thus reads the report to say clearly that any debt related to the Citibank Account no longer existed when Alsibai filed for bankruptcy, and any references to previously existing debt were simply accurate historical information. In fact, Trans Union argues that under these circumstances, it would have been *in*accurate to describe the debt as discharged in bankruptcy, since "[i]t is axiomatic that a consumer cannot discharge a debt that did not exist at the time of bankruptcy." *Id.* Alsibai responds that the report's use of the phrase "Charged Off" and its notation of a "High Balance" in July and August of 2019 render it "patently inaccurate" or, at the very least, misleading. Pl.'s Mem. in Opp. at 3–10 [ECF No. 46].

Alsibai has the better argument. Even assuming that the report is "technically correct," it "may nevertheless be considered inaccurate if it is misleading."[4] *Morris v. Experian Info. Sols., Inc.*, ___ F. Supp. 3d ___, No. 20-cv-0604 (PJS/HB), 2020 WL 4703900, at *2 (D. Minn. Aug. 13, 2020) (to be published); *see also Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 901 (D. Minn. 2019). In the context of a consumer's Chapter 7 bankruptcy discharge, the question whether a credit report is misleading "comes down to whether [it] unambiguously communicate[s] that the debt reported on the challenged tradeline[] did not exist on the date that [the plaintiff] filed for Chapter 7 bankruptcy." *Morris*, 2020 WL 4703900, at *4. If the report can be read to say that the plaintiff "owe[d] an unsecured debt to a particular creditor" as of the bankruptcy filing date, and the agency knew of the consumer's subsequent discharge but did not report the debt as discharged, then there is a plausible FCRA claim. *Id.* at *3. If, instead, "the credit report is clear that the consumer did not owe a debt to the creditor at the time that [the plaintiff] filed for bankruptcy," then the agency has no duty to "report that the debt *formerly* owed to the creditor was discharged in bankruptcy." *Id.* (emphasis added).

In *Morris*, Trans Union reported, after the plaintiff's bankruptcy discharge, that one of the plaintiff's accounts was "Charged Off" and closed with a zero balance before the

---

[4] The Eighth Circuit has not decided whether misleading information can be actionable under the FCRA, *see Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013) (recognizing that this is an open question), but other circuits have held that it can, *see Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998); *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984).

plaintiff filed her bankruptcy petition. *Id.* at *1, *4. As Judge Schiltz noted, however, this was not the same thing as reporting that no debt *existed* at the time of the bankruptcy filing. "A debt that is 'charged off' still exists, and nothing prevents the creditor from selling it or taking steps to collect it." *Id.* at *4 (citing *In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 614 (2d Cir. 2020) (noting that reporting a debt as "charged off" indicates that "the debt was severely delinquent but still outstanding")). Because the report in *Morris* did not report the bankruptcy discharge on the challenged tradeline, it "could be read to report an existing, undischarged, pre-bankruptcy debt." *Id.* at *5.

There are no material differences between *Morris* and this case. Here, too, Trans Union reported that Alsibai's Citibank Account was closed with a zero balance well before he filed his Chapter 7 bankruptcy petition. ECF No. 46-1. But it also reported that the account's "Pay Status" was "Charged Off," *id.*, and Alsibai has specifically alleged that "Charged Off" status "means that a debt may be owed." Am. Compl. ¶ 24. Adding to the ambiguity is the report's statement that the account had a "High Balance of $5,344" from March 2017 to March 2019 and from July to August 2019, after Alsibai's bankruptcy discharge. *Id.* There is no indication that Citibank sold the debt to some other entity or was otherwise unable to "tak[e] steps to collect it." *See Morris*, 2020 WL 4703900, at *4. Given these facts, it is at least ambiguous whether Trans Union reported an "existing, undischarged, pre-bankruptcy debt" on its September 2019 report, and this ambiguity is enough to get Alsibai past the pleading stage on the issue of accuracy. *See id.* at *5; *see also Beseke*, 420 F. Supp. 3d at 891–92 ("Whether technically accurate information is

7

sufficiently misleading to qualify as inaccurate for purposes of the FCRA is generally a question to be submitted to the jury.").[5]

Trans Union cites several cases from other districts in support of its argument that it only reported accurate information about the Citibank account. Def.'s Reply Mem. at 6–10 [ECF No. 54]. Each of these cases is factually distinguishable, however, and none provides a basis to disregard *Morris*. In two of the cases, the courts noted that credit reports were accurate in part because they reported that the disputed accounts had been sold to another entity. *See Burrow v. Equifax Info. Servs., LLC*, No. 1:18-cv-05134-JPB-LTW, 2019 WL 5417147, at *8–9 (N.D. Ga. Aug. 5, 2019); *Meeks v. Equifax Info. Servs., LLC*, No. 1:18-CV-03666-TWT-WEJ, 2019 WL 3521955, at *6 (N.D. Ga. May 14, 2019), *report and recommendation adopted*, 2019 WL 3526370 (N.D. Ga. June 8, 2019). Indeed, Judge Schiltz acknowledged in *Morris* that a report would not be misleading if it reported that "the creditor closed the account *and* sold the debt to someone else." 2020 WL 4703900, at *3 (emphasis added). But nothing on the credit report in this case suggests that Citibank sold the debt to someone else.

In other cases, courts have held that it is not misleading to report accurate *historical* data about a debt where the report makes it clear that there is no ongoing obligation. *See Thomas v. Equifax Info. Servs., LLC*, No. 3:19-cv-286, 2020 WL 1987949, at *4–6 (S.D.

---

[5]   Alsibai also submitted a hearing transcript from another similar case, *Johnson v. Experian Information Solutions, Inc.*, No. 20-cv-717 (PJS/HB), in which Judge Schiltz denied a motion to dismiss from the bench. ECF No. 48-1. In it, Judge Schiltz provides an analysis consistent with *Morris*. Given the on-point opinion in *Morris*, it is unnecessary to separately discuss the *Johnson* transcript.

Ohio Apr. 27, 2020) (holding that it was not misleading for a credit report to include "historical payment terms" when it also "depict[ed] the account as closed with a zero-balance" because "no reasonable person would . . . believ[e] that [the plaintiff] ha[d] any ongoing monthly obligation" on the loan); *Martin v. Equifax Info. Servs., LLC*, No. 4:19-CV-3691, 2020 WL 1904496, at *2 (S.D. Tex. Apr. 17, 2020) (holding that it was not inaccurate to report historical monthly payment terms when an account was labeled "charged off" and "closed" because the latter terms "clearly indicate[d] that the account [was] no longer active"); *Euring v. Equifax Info. Servs., LLC*, 19-CV-11675, 2020 WL 1508344, at *5 (E.D. Mich. Mar. 30, 2020). Here, it is not clear on the face of the report that its description of the Citibank Account is solely historical. In addition to the ambiguous nature of the phrase "Charged Off," the report states at one point that the Citibank Account had a "High Balance" in the months of July and August 2019—during and after Alsibai's bankruptcy proceedings—which may contradict its report of a zero balance. Of course, Trans Union might be able to present evidence down the road that this information would not mislead a reasonable reader, but at the pleading stage, the ambiguity is enough.

Finally, Trans Union cites two cases suggesting that it may not be misleading to omit any mention of a bankruptcy discharge as long as the report shows a zero balance and zero past-due amount on the account in question. *See Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *4–5 (N.D. Ill. Aug. 19, 2016); *Connor v. JP Morgan Chase Bank, N.A.*, No. 15 C 8601, 2016 WL 7201189, at *3 (N.D. Ill. Mar. 22, 2016). Neither of these cases is quite on point, however, because they did not deal with the

9

ambiguity of the phrase "Charged Off" or with reports of a high balance specifically tied to time periods *after* a plaintiff's bankruptcy discharge. Because Alsibai has plausibly alleged that Trans Union's report could be read to describe an existing debt that was not discharged in bankruptcy, he has stated a claim that the report was inaccurate.

B

The remaining issues are more straightforward. Trans Union also argues that Alsibai has not plausibly alleged that it "failed to follow reasonable procedures intended to assure the accuracy of its reports." *Paul*, 793 F. Supp. 2d at 1101; *see* 15 U.S.C. § 1681e(b). In support of this argument, Trans Union first cites a district court order approving a settlement in *White v. Experian Information Solutions, Inc.*, No. 05-CV-1070 (C.D. Cal. Aug. 19, 2008), which resolved claims against Trans Union and other credit reporting agencies. Def.'s Mem. in Supp. at 5–7; ECF No. 39-2, at 4–5.[6] Under this order, the consumer reporting agency defendants agreed to adopt certain procedures for reporting accounts after consumer bankruptcies, and the reviewing court stated that the procedures were "conclusively deemed" to be reasonable under the FCRA. *Id.* at 30. Trans Union asserts that the *White* order does not require it to report closed accounts as "included in bankruptcy" and therefore that it was reasonable not to do so here. Def.'s Mem. in Supp. at 6–7.

---

[6]  In addition to "documents whose contents are alleged in a complaint," "items subject to judicial notice" and "matters of public record" like the *White* order can also be considered without converting a Rule 12 motion into one for summary judgment. *Zean*, 858 F.3d at 526 (citations omitted).

10

Trans Union's argument is beside the point for two reasons. First, as Judge Schiltz recognized in *Morris*, "*White* is not binding on [a federal district court in Minnesota]." 2020 WL 4703900, at *4. Second, as noted above, Trans Union's report does not stop at the word "closed" when describing Alsibai's Citibank Account. It goes on to report both a "Pay Status" of "Charged Off" and a "High Balance" for a time period during and immediately after Alsibai's bankruptcy proceeding, which creates ambiguity as to whether a debt existed when Alsibai filed his bankruptcy petition. ECF No. 46-1; *see Morris*, 2020 WL 4703900, at *4 (applying this reasoning).

Trans Union also argues that, even if its procedures were not reasonable *per se* under *White*, Alsibai's claim nevertheless fails because Trans Union lacked notice of any potential inaccuracies. Courts in this district and beyond have recognized that a consumer reporting agency cannot be liable under the FCRA absent some notice that their reports would contain inaccurate information. *See, e.g.*, *Gohman v. Equifax Info. Servs., LLC*, 395 F. Supp. 2d 822, 826–27 (D. Minn. 2005); *Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873, 877–78 (D. Minn. 2004). This is because consumer reporting agencies are not "strictly liable" under the FCRA for inaccurate reporting; they need only follow "reasonable procedures" to ensure accuracy. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979) (quoting 15 U.S.C. § 1681e(b)). An agency can typically rely on the source of its information when it has "no reason to suspect [that its] initial source was inaccurate." *Olwell v. Med. Info. Bureau*, 01-cv-1481 (JRT/FLN), 2003 WL 79035, at *4 (D. Minn. Jan. 7, 2003); *see Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (holding that

11

it was reasonable as a matter of law for a credit reporting agency to rely on information obtained from court dockets).

Once again, the weight of authority is against Trans Union. To the extent it argues that Alsibai himself had to be the one to contact the agency to report an inaccuracy, *see* Def.'s Mem. in Supp. at 7–8, it is wrong. The provision of the FCRA at issue here, § 1681e, does not require a consumer to report inaccurate information to an agency before filing a lawsuit.[7] *See Morris*, 2020 WL 4703900, at *3. Rather, a plaintiff can prevail at the pleading stage by plausibly alleging that an agency "acted unreasonably given the information that was already in [its] possession." *Morris*, 2020 WL 4703900, at *3.

Alsibai clears this low bar. He alleges that Trans Union "had reason to know that its reporting of the [Citibank] Account was inaccurate because [it] was also reporting [his] bankruptcy as discharged . . . and all [his] other bankruptcy debts as discharged." Am. Compl. ¶ 25. And he too points to the *White* settlement agreement, which required the defendant agencies to report all pre-bankruptcy "revolving" accounts as "discharged" in a consumer's bankruptcy "or to indicate in some way that no debt is due or owing by the consumer." *Id.* ¶¶ 27–28; *see* ECF No. 39-2, at 7–8, 22–23.[8] *See Morris*, 2020 WL

---

[7]   A different provision of the FCRA does require something like this, *see* 15 U.S.C. § 1681i (providing procedures for the resolution of disputed information that a consumer brings to attention of a reporting agency), but that provision is not at issue here.

[8]   Alsibai makes similar arguments about another proposed class action settlement. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007); Am. Compl. ¶¶ 31–34. The court in *Acosta* denied the plaintiffs' motion for approval of a stipulated plaintiff class and preliminary approval of a class action settlement. *Acosta*, 243 F.R.D. at 379. The *Acosta* plaintiffs' claims were later folded into the *White* settlement. *See* Def.'s Reply Mem. at 11; ECF 39-2, at 4–5. For this reason, it is not necessary to

12

4703900, at *3 (noting that the *White* settlement "makes clear" that agencies "knew that unsecured consumer debts . . . are typically discharged in Chapter 7 proceedings"). Given these facts, as well as the ambiguity in Trans Union's description of the Citibank Account, Alsibai has plausibly alleged that Trans Union did not "follow reasonable procedures to assure maximum possible accuracy" in its reports. 15 U.S.C. § 1681e(b).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Trans Union, LLC's Motion for Judgment on the Pleadings [ECF No. 37] is **DENIED**.

Dated:  September 23, 2020          s/ Eric C. Tostrud  
                                                     Eric C. Tostrud  
                                                     United States District Court

---

discuss *Acosta* separately in order to decide whether Trans Union had sufficient notice of the potential for an inaccuracy.